Case 7:24-cv-00098   Document 34   Filed 02/05/26 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
February 05, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| CRISTINA POMPA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 7:24-CV-098 |
| § | |
| EDINBURG CONSOLIDATED § | |
| INDEPENDENT SCHOOL DISTRICT, § | |
| § | |
| Defendant. § | |

## ORDER AND OPINION

Plaintiff Cristina Pompa brings this lawsuit against Edinburg Consolidated Independent School District, alleging claims under the Fair Labor Standards Act. The District moves for summary judgment, and Pompa has filed no response. (*See* Motion, Doc. 29) For the following reasons, the Court finds that the District has carried its burden and is entitled to summary judgment as to Pompa's causes of action.

## I.  Factual Background and Procedural History

### A. Factual Background

In 2015, the District hired Cristina Pompa as a school police officer.

Six years later, in January 2021, Pompa had a child and took leave under the Family and Medical Leave Act. During her leave, Pompa's supervisor and Ricardo Perez, the Chief of Police for the District's Police Department, submitted Pompa's annual evaluation for the preceding year, rating her as exceeding expectations.

In April, Pompa resumed her work at Betts Elementary School and requested private locations at the campus to express breast milk. Principal Ernestina Cano directed Pompa to various makeshift lactation rooms, such as a COVID-19 isolation room, but did not provide a permanent space. Pompa complained frequently to Principal Cano regarding the difficulty of finding a private room to use. But she acknowledges that she was "able to [express milk] as I

needed[,]" utilizing time during her 15-minute breaks and her lunch hour. (Pompa Dep., 29–2, 27–28) When asked how often the District allowed her "to pump while at work[,]" she responded, "as needed." (*Id.* at 28) No one from the District ever told her to stop expressing milk or refused her a break to do so. When she needed to express milk, she "would just notify my supervisor and just do that." (*Id.*) At most, she "guess[ed]" that some individuals "attempted to influence [her] to do formula[,]" but she did not specify the nature of the attempted influence. (*Id.* at 27) At times, emergencies arose while she was expressing milk, and she would leave the equipment in the room and then "come back to it" after the emergency resolved. (*Id.* at 29)

Pompa also testified regarding the locations that the District provided her to express milk. At each campus at which she worked, she used a private room that she could lock. The locations included nurse's offices, an office closet, a library closet, and a drug counseling office. She locked the door in each location, and although at times an individual attempted to open the door, she would alert them to her presence. She acknowledged that no one ever walked in on her and that she was shielded from view at all times.

On August 18, 2021, Pompa filed a Title IX complaint against Principal Cano and the District, alleging that Principal Cano had not provided her with a lactation space as required under law. At some point after this complaint, the District reassigned Pompa to Guerra Elementary School, which Principal Lisa Valdez directed.

In February 2022, Pompa was rated "clearly outstanding," the highest level possible, during her performance review for the preceding year. (Performance Review, Doc. 29–5)

Two months later, in April, Pompa was the subject of two independent complaints at Guerra Elementary. First, on April 4, Pompa observed a student give a breakfast taco to a staff member. At lunch time, she questioned the student about the matter. Two days later, Principal Valdez met with Pompa and expressed that she considered Pompa's reaction "out of proportion," and that she disagreed with Pompa's decision to file a report. (Valdez Letter, Doc. 29–6) Principal

Valdez filed a letter with the District indicating that she had "lost all trust and confidence in [Pompa's] ability to save and protect my students and my staff," and requesting that Pompa be removed from the campus immediately. (*Id.*)

Five days after Principal Valdez's letter, Pompa was working at a different campus. Sergeant Mary Sepulveda observed her conduct a "pat down" search of female students, with the search involving Pompa "mov[ing] both of her hands all around inside the female student's unzipped pant waistline." (Sepulveda Police Report, Doc. 29–9, 2) Sergeant Sepulveda instructed Pompa to stop the searches because Pompa was conducting them in a manner that violated District policy. That same day, Sergeant Sepulveda filed a report complaining of Pompa's conduct. In response, the District immediately suspended Pompa.

The District's police department investigated each incident and affirmed the factual basis of the allegations. On May 16, Chief Perez recommended that Superintended Salinas terminate Pompa. On June 21, the District's Board of Trustees approved Pompa's termination.

### B. Procedural History

In October 2023, Pompa filed this action in a Texas state court, alleging that (1) the District failed to provide her access to a lactation space, as required by 29 U.S.C. § 207(r); and (2) the District retaliated against her by terminating her employment.

In March 2024, the District removed the matter to federal court and then moved for summary judgment. After Pompa filed her response, the Court ordered mediation and denied all pending motions without prejudice to their refiling within seven days of the mediator notifying the Court that mediation had proved unsuccessful. On September 29, 2025, the mediator provided such notice.[1] Eight days later, on October 7, the District filed its pending Motion for Summary Judgment (Doc. 29), which largely contains the arguments that it presented in its first motion.

---

[1] On October 2, 2025, the present lawsuit was re-assigned to this Court.

Pompa requested that the Court strike the renewed motion for summary judgment as untimely. (Motion to Strike, Doc. 30)  The Court denied the motion to strike, found the motion for summary judgment as timely filed, and ordered that Pompa file her response by November 7. (*See* Order, Doc. 33)  Pompa filed no response.

## II.     Standard of Review

A court grants summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotations omitted).  A genuine dispute about a material fact exists when the evidence demonstrates that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.  Both parties must submit evidence of contradictory facts to create an actual controversy of fact. *Olabishiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  In making its determination, a court must draw all justifiable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, the court must grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

When the non-movant fails to make a factual showing in opposition to a summary judgment motion, the court is not required to search the record sua sponte for a genuine issue of material fact.  "Rule 56 does not impose . . . a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III. Analysis

Pompa alleges that the District violated her substantive rights under the Fair Labor Standards Act ("FLSA") by failing to provide her "with a place, other than a bathroom, that [was] shielded from view and free from intrusion from coworkers and the public, to express breast milk[.]" (Pet., Doc. 1–1, ¶ 74)  She also claims that the District retaliated against her "for complaining about the access to a lactation room free from intrusion[.]" (*Id.* at ¶ 76)  She bases her claims on 29 U.S.C. § 207(r) and its remedies provision found in 29 U.S.C. § 216(b).[2]

#### A. Substantive Violations of Section 207(r)

Section 207(r) prescribed the requirements for "reasonable break times for nursing mothers[,]" specifying frequency and location requirements. 29 U.S.C. § 207(r)(1)(A) (repealed 2022).  First, the employer had to provide "a reasonable break time for an employee to express breast milk . . . for 1 year after the child's birth each time such employee has need to express the milk[.]" *Id.*  In addition, the statute required the employer to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public[.]" 29 U.S.C. § 207(r)(1)(B) (repealed 2022).

Courts in the Fifth Circuit have not had occasion to delineate the parameters for employers to satisfy the "reasonable break time" requirements under Section 207(r)(1).  But the competent summary judgment evidence, even when viewed in the light most favorable to Pompa, demonstrates that the District satisfied the statute's requirements and that no genuine issue of material fact exists on the matter.  As previously explained in this Order and Opinion, Pompa concedes that she was "able to [express milk] as . . . needed" and that no one from the District ever told her to stop expressing milk or refused her a break to do so.  And she described the locations that the District provided, which were always private rooms that she could lock.  No one ever walked in on her, and she was shielded from view at all times.

---

[2] Congress repealed Section 207(r) in December 2022, but the alleged violations occurred when the statute remained effective.

Pompa's own testimony establishes that at all times that she needed to express milk, the District afforded her "a place, other than a bathroom, that [was] shielded from view and free from intrusion from coworkers and the public." While some evidence reveals that Pompa at times had difficulty obtaining a private lactation space, it reflects that Pompa ultimately obtained that access and was able to express milk as needed. As a result, Pompa fails to create a genuine dispute of material fact as to her claim that the District failed to meet the requirements of 29 U.S.C. § 207(r).[3]

### B. Retaliation under FLSA

Pompa also alleges that the District violated Section 216(b) by "retaliat[ing]" against her "for complaining about the access to a lactation room free from intrusion[.]" (Pet., Doc. 1–1, ¶ 76) The District moves for summary judgment on the grounds that Pompa fails to present a *prima facie* case of discrimination, and that in any event, the District possessed legitimate, nonretaliatory grounds to terminate her employment.

Courts considering a retaliation claim under the FLSA apply a burden-shifting framework. First, the employee must establish a prima facie case for retaliation. *Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017) (citing *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008)). If the employee presents such a case, the employer then bears the burden to demonstrate a non-discriminatory reason for the adverse action against the employee. *Starnes*, 849 F.3d at 632. If the employer carries its burden, the burden returns to the employee, who must then "identify evidence from which a jury could conclude" that the proffered reason is pretextual. *Id.*

As to the first step, an employee establishes a prima facie case of retaliation under the FLSA by alleging that: (1) she participated in protected activity under the FLSA (i.e., she lodged a

---

[3] In addition, Section 216(b) prescribes the remedies for an employer's failure to comply with Section 207(r). Those remedies include recovery of "unpaid minimum wages, or [ ] unpaid overtime compensation, as the case may be[.]" 29 U.S.C. § 216(b). Here, Pompa fails to allege, much less submit competent summary judgment evidence, of any such damages. This failure would also warrant dismissal of her cause of action. *See e.g., Barbosa v. Boiler House LLC*, No. 5:17-CV-340-DAE, 2018 WL 8545855, at *6 (W.D. Tex. Feb. 23, 2018) (dismissing a claim under Section 207(r), in part because the plaintiff alleged no lost minimum wages or overtime compensation).

complaint or instituted a proceeding); (2) she experienced an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). In the present case, the District focuses its Motion on the third element–i.e., whether some evidence creates a fact issue regarding the required causal link.

"A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). A "very close" temporal proximity between the protected act and the alleged retaliation supports the existence of the required causal link. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807–08 (5th Cir. 2007); *see also Stuntz v. Lion Elastomers*, L.L.C., 826 F. App'x 391 405 (5th Cir. 2020) (per curiam) (unpublished). But courts have found that when more than two months have elapsed between the events, temporal proximity by itself is insufficient to raise a fact issue on this element. *See, e.g.*, *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 884 (5th Cir. 2020) (per curiam) (unpublished) (two and a half months); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (five months); *Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 679 (5th Cir. 2021) (six months); *Bell v. Bank of Am.*, 171 F. App'x. 442, 444 (5th Cir. 2006) (per curiam) (unpublished) (seven months); *Harvey v. Stringer*, 113 F. App'x. 629, 631 (5th Cir.2004) (per curiam) (unpublished) (ten months). And even a "very close" temporal proximity will only establish a *prima facie* case of retaliation "in some instances." *Strong*, 482 F.3d at 808 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Still, when other evidence of pretext retaliation exists, a court may relax the requirement for temporal proximity. *Starnes*, 849 F.3d at 634–35; *Gee v. Principi*, 289 F.3d 342, 346 n.3 (5th Cir. 2002).

In the present case, Pompa submitted her complaint to the District in August 2021, but was not suspended until April 2022. The eight-month delay means that, by itself, the temporal proximity between her complaint and her termination cannot create a fact issue.

The remaining competent summary judgment evidence only reinforces the absence of the necessary causal link. Six months after Pompa submitted her complaint, her supervisor gave her a stellar annual evaluation, reflecting no adverse action against her after her complaint. Shortly thereafter, however, in April 2022, two separate events occurred that resulted in complaints against Pompa related to her job performance. The incidents concerned Pompa filing a report that Principal Valdez found unnecessary, and Pompa conducting inappropriate body searches of students. Only after these two events did the District suspend and ultimately terminate Pompa, and even then only after an investigation concluded that Pompa had violated district policy through her work performance. Thus, when viewed as a whole, the summary judgment record reveals that even after Pompa submitted her complaint regarding lactation spaces, she remained in favor with the District, with a change occurring only after two work-related incidents raised concerns about her job performance. In light of this evidence, Pompa fails to raise a fact issue as to the element of causal link.

The absence of a causal link means that Pompa fails to present a prima facie case of retaliation. In addition, even if she did present such a case, the District submits ample summary judgment evidence establishing non-retaliatory reasons for her suspension and eventual termination. In particular, the District suspended Pompa after two incidents related to her job performance, and terminated her after the investigation of those incidents led the District to conclude that Pompa had violated the District's policies. This uncontroverted summary judgment evidence satisfies the District's obligation to present non-retaliatory reasons for an adverse employment action, and Pompa's failure to file a response means that she has failed to submit any evidence creating a fact issue as to whether those non-retaliatory reasons were pretextual.

## IV.  Conclusion

For these reasons, it is:

**ORDERED** that by Defendant Edinburg Consolidated Independent School District's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

The Court shall separately issue a Final Judgment in accordance with this Order and Opinion.

Signed on February 5, 2026.

_____
Fernando Rodriguez, Jr.
United States District Judge